UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

RICHARD S. DAVIS,

        Plaintiff,

v.

DR. SEAN ELLIOT and DR. HANSON,
In their official capacity as Medical Staff at
Santiam Correctional Institution and/or
The Oregon Department of Corrections,

        Defendants.

Case No. 6:19-cv-00747-AC

OPINION AND ORDER

ACOSTA, Magistrate Judge:

*Introduction*

Plaintiff Richard S. Davis ("Davis"), a former prisoner of the State of Oregon housed at the Santiam Correctional Institution ("Santiam") appearing *pro se*, filed this action under 42 U.S.C.

§ 1983 ("Section 1983") against Oregon Department of Corrections ("Department")[1] employees Sean Elliot ("Elliot")[2] and Dr. Ole Hanson ("Dr. Hanson") (collectively "Defendants") alleging Defendants violated his rights under the Eighth Amendment by not providing him with a supply of Vistaril, his prescribed anti-anxiety medication, or instructions of where and how to continue his treatment, upon his release from custody.[3] Currently before the court is a motion for summary judgment filed by Defendants based on the absence of a constitutional violation and qualified immunity (the "Motion").

The court finds Davis failed to adequately support his claim by alleging a violation of his rights under the Eighth Amendment and, alternatively, Defendants are entitled to qualified immunity on his claim. Accordingly, the Motion is granted, and Davis's complaint dismissed with prejudice.[4]

*Preliminary Procedural Matter*

On January 5, 2021, the day after Defendants filed the Motion, the court issued and mailed to Davis a Summary Judgment Advice Notice and Scheduling Order ("SJ Notice"). The SJ Notice advised Davis:

> The defendants have made a motion for summary judgment (Motion for Summary Judgment [47]) by which they seek to have your case dismissed. A

---

[1] Davis also named the Department as a defendant in this action. The court dismissed the Department based on sovereign immunity under the Eleventh Amendment in an Order filed September 19, 2019 (ECF No. 14).
[2] Davis refers to Elliot as "Dr. Elliot" in the complaint, but the record reveals Elliot is a Nurse Practitioner, not a doctor. (Roberts Decl. dated December 30, 2020, ECF No. 48 ("Roberts Decl."), ¶ 4.)
[3] Davis also asserted claims for negligence and medical malpractice, which the court dismissed in an Opinion and Order filed January 14, 2020 (ECF No. 26).
[4] The parties have consented to jurisdiction by magistrate judge in accordance with 28 U.S.C. § 636(c)(1).

> motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case.
>
> Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine dispute of material fact – that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials, as provided in Rule 56(c), that contradict the facts shown in the defendants' declarations and documents and show that there is a genuine dispute of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial.

(Summ. J. Advice Notice and Scheduling Order, ECF No. 49.) The SJ Notice directed Davis to file his opposition to the Motion within thirty days of the SJ Notice, or on or before February 4, 2021. Davis failed to file such response and the unopposed Motion went under advisement on February 11,2021.

The only material Davis offered to support his claims is the content of his second amended complaint filed August 25, 2020 ("Complaint") and attached exhibits. The Complaint is verified: it contains a sworn statement declaring, under penalty of perjury, the allegations are true and correct in accordance with 28 U.S.C. § 1746. (Second Am. Compl., ECF No. 42 ("Compl.) at 10.) Accordingly, the court may deem the Complaint an affidavit in opposition to the Motion, to the extent it describes Davis's personal knowledge of admissible facts. See Lew v. Kona Hosp., 754 F.2d 1420, 1423 (9th Cir.1985) (a verified complaint may be used as an opposing affidavit under Rule 56 to the extent it expresses personal knowledge of admissible facts but an unverified complaint is insufficient to counter a summary judgment motion supported by affidavits).

PAGE 3 - OPINION AND ORDER

The evidence presented in support of or in opposition to a motion for summary judgment must be based on personal knowledge, properly authenticated, and admissible under the Federal Rules of Evidence. FED. R. CIV. P. 56(c) (2020). Davis does not properly authenticate the exhibits attached to the Complaint. However, most of the exhibits are medical records also offered and properly authenticated by Defendants in support of their Motion through the declaration of Warren Roberts, M.D., Medical Director for Department Health Services ("Dr. Roberts"). Additionally, both Davis and Defendants offer a grievance form dated December 27, 2018, which Defendants properly authenticated. Consequently, the medical records and the December 27, 2018 grievance form are properly before the court and will be considered.

Davis also offers a "patient drug education" sheet dated January 3, 2019, describing uses and possible side effects for Vistaril apparently provided to Davis by Santiam (the "Sheet"). The Sheet identifies "trouble controlling body movements" and "feeling confused" as rare, but possible, side effects that may occur when taking a drug such as Vistaril. Defendants acknowledge these possible side effects in the Motion and supporting declaration. Accordingly, the court will consider the information highlighted by Davis in the Sheet as consistent with, and properly authenticated, by Defendants.

Finally, the remaining exhibits offered by Davis are copies of grievance forms and responses relating to the claims alleged in the Complaint not offered or authenticated by Defendants. To the extent Davis offers these exhibits to establish he exhausted his administrative remedies, exhaustion is not at issue and the exhibits are irrelevant. To the extent he offers the exhibits to support the allegations in the Complaint, they are duplicative and not necessary to resolution of the issues before the court.

PAGE 4 - OPINION AND ORDER

*Background*

Davis alleges Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment when they released him from custody without a supply of Vistaril, his prescribed anti-anxiety medication, or instructions on where and how to continue his treatment. He claims he suffered a mental breakdown as a side effect of withdrawal from Vistaril which contributed to an incident that led to his arrest just nineteen days after his release.

In June 2018, Davis was housed at Santiam and serving the latter part of an eighty-four-month sentence. (Compl. at 4.) Department medical records reveal Davis received a prescription for Vistaril on June 21, 2018, for panic attacks and he took the medication through October 15, 2018. (Roberts Decl. Attach. 1 at 6, 9, 13-18.) Davis regularly opted to take two pills at a time and occasionally did not take the medication at all for up to three consecutive days. (Roberts Decl. Attach. 1 at 13-18.) Davis claims Elliot never explained why he was diagnosing Davis with anxiety or informed Davis of potential side effects of Vistaril. (Compl. at 4.)

Defendants offer the following description of Vistaril and its side effects through the declaration of Dr. Roberts:

> Vistaril (Hydroxyzine) is an antihistamine that is commonly used short-term to treat anxiety and tension. Side effects include drowsiness, dizziness, blurred vision, headache, dry mouth, and constipation. Also, side effects may include trouble controlling body movements and confusion. Trouble controlling body movements is caused by nervous system disorder and can manifest as tremors, clumsiness, inaccuracy, and imbalance. The likelihood of withdrawal is very low as the medication is out of a person's system within 20 hours of oral ingestion.

(Roberts Decl. ¶ 6.)

Davis was released from Department custody on October 16, 2018. (Roberts Decl. Attach. 4 at 2.) Davis represents he "was not given his [Vistaril] medication nor the instructions of where

and how to continue his treatment" upon his release in violation of Department "protocols, policies, and rules." (Compl. at 2, 4.) He asserts that because of Defendants' failure to provide the medication, instructions on continued treatment, or follow up with Davis after his release, he "went into withdrawal" on November 4, 2018, became confused and paranoid, experienced "uncontrollable body movements," and was arrested and charged with unlawful use of a weapon, coercion, menacing, and assault. (Compl. at 3, 5; Roberts Decl. Attach. 4 at 1.) The record contains no evidence Davis discussed any anxiety-related concerns with medical staff in the days before his release, requested Vistaril medication at the time of his release, or complained to his parole officer or any other Department official about his lack of Vistaril or his symptoms of withdrawal while he was out of custody.

After his arrest, Davis completed a Marion County medical request form on November 7, 2018, indicating he was "in pretty good health," identifying his medications as "blood pressure pills and a water pill," and suggesting Santiam could provide additional information on his medications. (Roberts Decl. Attach. 2 at 4.) On November 18, 2018, and again on November 21, 2018, Davis represented in medical request forms he was taking only HCTZ and Vistaril, and he requested a credit for listed medications he was no longer taking. (Roberts Decl. Attach. 2 at 2, 3.) He also requested a copy of his medical records that would show on what date he first started taking Vistaril, as well as reflect the information he received about its side effects. (Roberts Decl. Attach. 2 at 3.) On November 22, 2018, a physician prescribed daily Vistaril, and it appears Davis took the medication through December 3, 2018. (Roberts Decl. Attach. 2 at 1, 8-9.)

In the "mental health" section of a Department medical history form dated December 4, 2018, Davis reported he had been treated for "ptsd" since 2012 and currently was on the mental

health medication of Vistaril. (Roberts Decl. Attach. 1 at 1.) Department records reveal Davis received another prescription for Vistaril on December 4, 2018, and he took the medication on most days between December 4, 2018, and December 16, 2018. (Roberts Decl. Attach. 1 at 4, 11.) Davis additionally stated on December 4, 2018, that he had never had serious withdrawal symptoms after stopping drugs or alcohol. (Roberts Decl. Attach. 1 at 1.)

On December 11, 2018, Charlotte Jesky, Ph.D. ("Dr. Jesky"), examined Davis at the request of the Department due to Davis's "currently prescribed psychotropic medication." (Roberts Decl. Attach. 1 at 32.) Dr. Jesky listed Vistaril as one of Davis's current medications and noted Davis reported an anxiety level of five[5] "with his current meds." (Roberts Decl. Attach. 1 at 32.) He also indicated Davis "said he was first prescribed medication for anxiety in June of 2018 and has taken them ever since" and "has received mental health services as an adult." (Roberts Decl. Attach. 1 at 32, 33.) However, Davis expressed a desire to avoid involvement with the Department's behavioral health services ("BHS"), leading Dr. Jesky to believe Davis "would like his medication to be prescribed by medical," after which Dr. Jesky commented "it appears that indeed his current Vistaril was prescribed by medical, possibly for sleep." (Roberts Decl. Attach. 1 at 34.)

In a communication form dated December 14, 2018, Davis reported he was "not BHS [Behavior Health Services] nor do I have any mental health issues to be addressed," explained Elliot prescribed Vistaril to calm his nerves five or six months before his October release date, and expressed a desire to be transferred back to Santiam. (Roberts Decl. Attach. 1 at 35.) The

---

[5] The level was based on a scale of one to ten, with one being no anxiety. (Roberts Decl. Attach. 1 at 32.)

December 17, 2018 response stated that because of Davis's active medications, he would "have some restrictions in place." (Roberts Decl. Attach. 1 at 35.)

During a subsequent December 20, 2018 evaluation to discuss Davis's mental health and Vistaril prescription, Davis again explained Elliot prescribed Vistaril for him in June 2018 because he "was getting anxious' about his impending release, but he denied a history of mental disease or BHS placement during his previous incarcerations. (Roberts Decl. Attach. 1 at 30.) He indicated he "paroled in October, 2018 without a discharge prescription for the [Vistaril]," "had no [mental health] issues following his 10/2018 release[,] and ended up in jail on new charges about 17 days after he paroled." (Roberts Decl. Attach. 1 at 31.) He also reported that while his Vistaril prescription had been renewed when he was returned to Department custody, he was not taking the medication, did not have anxiety or other mental health concerns, and agreed to "contact BHS with any future needs." (Roberts Decl. Attach. 1 at 30, 31.) As a result of this evaluation, the Department found Davis was "stable and doing well," and formally discontinued the Vistaril prescription on December 20, 2018, with the note "there is no indication for it or other psychiatric care at this time." (Roberts Decl. Attach. 1 at 4, 31.)

Dr. Roberts believes, in his professional opinion, "Davis received appropriate treatment for the anxiety he was experiencing while incarcerated," noting once Davis was released, "it was unnecessary for him to be prescribed medication for anxiety when the core of his anxiety was going to be removed. (Roberts Decl. ¶ 5.) After reviewing Department records, Dr. Robert commented "Davis has a history of making inconsistent statements regarding his mental health needs and declining more comprehensive mental health treatment, making it difficult to engage in effective mental health care planning." (Roberts Decl. ¶ 5.) He further noted because Davis

PAGE 8 - OPINION AND ORDER

refused to participate in the BHS program, "which is a decision he made clear with multiple providers while in ODOC custody, [] Davis did not have access to more comprehensive post-release mental health follow-up programs available for BHS participants." (Roberts Decl. ¶ 5.) Finally, Dr. Roberts opined that because "Vistaril is not known to cause withdrawal symptoms, [] it is unlikely that [] Davis's actions 19 days after release were the result of withdrawal from Vistaril." (Roberts Decl. ¶ 5.)

*Legal Standard*

Summary judgment is appropriate where the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) (2020). Summary judgment is not proper if material factual issues exist for trial. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995).

The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. Id. at 324. A nonmoving party cannot defeat summary judgment by relying on the allegations in the complaint, or with unsupported conjecture or conclusory statements. Hernandez v. Spacelabs Medical, Inc., 343 F.3d 1107, 1112 (9th Cir. 2003). Thus, summary judgment should be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

The court must view the evidence in the light most favorable to the nonmoving party. Bell v. Cameron Meadows Land Co., 669 F.2d 1278, 1284 (9th Cir. 1982). All reasonable doubt as to

the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir. 1976). Where different ultimate inferences may be drawn, summary judgment is inappropriate. *Sankovich v. Life Ins. Co. of North America*, 638 F.2d 136, 140 (9th Cir. 1981).

However, deference to the nonmoving party has limits. A party asserting that a fact cannot be true or is genuinely disputed must support the assertion with admissible evidence. FED. R. CIV. P. 56(c) (2020). The "mere existence of a scintilla of evidence in support of the [party's] position [is] insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Therefore, where "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotations marks omitted).

*Discussion*

I.  Eighth Amendment Claim

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. CONST. amend VIII. "The Constitution 'does not mandate comfortable prisons,' but neither does it permit inhumane ones, and it is now settled that 'the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal citations omitted). "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Id.* at 828. A prison official violates the Eighth Amendment when two requirements are met. *Id.* at 834. "First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The second requirement follows from

the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" *Id.* (quoting *Wilson*, 501 U.S. at 297).

In the context of an Eight Amendment claim based on a failure to provide a supply of necessary medication upon release, the Ninth Circuit has held:

> the state must provide an outgoing prisoner who is receiving and continues to require medication with a supply sufficient to ensure that he has that medication available during the period of time reasonably necessary to permit him to consult a doctor and obtain a new supply. A state's failure to provide medication sufficient to cover this transitional period amounts to an abdication of its responsibility to provide medical care to those, who by reason of incarceration, are unable to provide for their own medical needs.

*Wakefield v. Thompson*, 177 F.3d 1160, 1164 (9th Cir. 1999). In *Wakefield*, the plaintiff was diagnosed with organic delusional disorder which, if untreated, rendered the plaintiff prone to violent outbursts. *Id*. at 1161-62. A prison physician prescribed Navane, a psychotropic medication, to manage the plaintiff's outbursts while he was in custody. *Id*. at 1162. The plaintiff alleged prison officials ignored his physician's orders to provide the plaintiff a two-week supply of Navane at the time of his release. *Id*. at 1162. As a result, the plaintiff was released without the medication, suffered a relapse which led to violent outburst eleven days after his release, and was subsequently arrested. *Id.*

The *Wakefield* court recognized Ninth Circuit precedent teaching that "in order to state a § 1983 claim based on the failure to provide such a supply of prescription medication, the plaintiff must allege facts which if proved would establish that the prison official or officials acted with 'deliberate indifference' to a 'serious medical need,'" but the court made "clear that mere negligence in the provision of medical care does not constitute a constitutional violation." *Id*. at 1164 (citing *Frost v. Agnos,* 152 F.3d 1124, 1130 (9th Cir.1998). It then found "[b]ecause the state has a responsibility under the Eighth Amendment to provide outgoing prisoners being treated

for a medical condition with a sufficient supply of medication to cover their transition to the outside world, and because Wakefield's allegations support a claim that Doe's actions constitute deliberate indifference, Wakefield has stated a valid § 1983 claim." *Id*. at 1165.

Here, Davis does not allege prison officials ignored physician's orders. Rather, he alleges prison medical staff failed to order the continuation of his Vistaril prescription or refer him to a provider for treatment of his behavioral problems after his release. Davis also does not allege he needed Vistaril to treat his anxiety attacks after his release. Rather, he alleges his withdrawal from Vistaril caused confusion, paranoia, and uncontrollable body movements nearly three weeks after this release which resulted in the criminal activity leading to his subsequent arrest. Defendants offer evidence that Davis's anxiety was related to his incarceration, that he did not need Vistaril after his release, and that any symptoms of withdrawal would have occurred within days of Davis's release.

Davis evidently disagrees with Defendants' decision to cease treatment for his anxiety at the time of his release. Accordingly, Davis effectively presents a claim which turns on a difference of opinion about, not reckless indifference to, the proper treatment of his serious medical condition. Under the Eighth Amendment, it is well-established that "[a] difference of opinion does not amount to a deliberate indifference to [a prisoner's] serious medical needs." *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). "To establish that a difference of medical opinion over appropriate medical treatment amounted to deliberate indifference, the prisoner 'must show that the course of treatment the doctors chose was medically unacceptable under the circumstances' and 'that they chose this course in conscious disregard of an excessive risk to [the prisoner's] health.'" *Lara–Cazares v. Dept. of Corrections*, No. CV09-838-PK, 2010 WL 5648879, at *7 (D. Or. Nov. 9,

2010) (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir.1996), *cert. denied*, 519 U.S. 1029 (1996)).

The evidence establishes Defendants did not deliberately deprive Davis of a medication considered medically necessary for the treatment of anxiety related to his incarceration or act in reckless disregard of an excessive risk to Davis's health. Dr. Robert's testimony establishes Davis received appropriate treatment for his anxiety while incarcerated and it was unnecessary to continue the medication when the cause of his anxiety was removed. Notably, Davis consistently refused comprehensive mental health evaluations or participation in BHS, making a referral to a behavioral treatment provider upon his release unnecessary. Moreover, Davis's failure to request continuation of the Vistaril prescription or express anxiety-related concerns shortly before or after his release is evidence that even Davis himself did not view the Vistaril as a necessary medication. Defendants were not deliberately indifferent or unreasonable in failing to provide Davis a short-term supply of Vistaril or refer him to a behavioral treatment center to treat his anxiety issues after his release.

Furthermore, the evidence establishes Davis's confusion, paranoia, and uncontrollable body movements allegedly responsible for his subsequent arrest were not related to Defendants' failure to provide Vistaril after Davis's release. The parties agree the side-effects of taking Vistaril may include dizziness, confusion, and trouble controlling body movements. However, the side-effects of the medication manifest as body movements such as tremors, clumsiness, inaccuracy, and imbalance, not the uncontrollable body movements likely to result in injuries to a third party which Davis cites. Moreover, these side-effects are the result of taking the medication, not side effects relating to withdrawal from the medication. Finally, Dr. Roberts states Vistaril cycles out

of a person's system within twenty hours of oral ingestion, thus making it extremely unlikely Davis's actions nearly three weeks after he last ingested Vistaril were related to Defendants' alleged failure to provide Vistaril to Davis at the time of his release. This conclusion is further supported by evidence Davis did not suffer any withdrawal symptoms when he occasionally elected to not take Vistaril for up to three days or when he stopped taking the medication in December 2018.

Defendants were not deliberately indifferent or unreasonable in failing to provide Davis the medication he believed was necessary at the time of his release. Defendants did not violate Davis's constitutional rights under the Eighth Amendment and are entitled to summary judgment.

## II. Qualified Immunity

Defendants alternatively argue they are entitled to qualified immunity with respect to Davis's claims. The doctrine of qualified immunity protects "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Therefore, public officials are generally immune from civil liability unless their actions violated clearly established law because "a reasonably competent public official should know the law governing his conduct." Id. "The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent of those who knowingly violated the law." Hunter v. Bryant, 502 U.S. 224, 229 (1991) (citation and internal quotations omitted). The key inquiry in determining whether an officer has qualified immunity is whether he or she has "fair warning" that the conduct was unconstitutional. Hope v. Pelzer, 536 U.S. 730, 739-40 (2002).

To determine whether the doctrine of qualified immunity applies to individual defendants, the court must decide whether a plaintiff has shown a constitutional or statutory right has been violated and whether the right at issue was "clearly established" at the time of the alleged violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223 236 (2009).

The clearly established inquiry "must be undertaken in the light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201. Officials may be held liable only for violation of a right the "contours [of which are] sufficiently clear [so] that a reasonable official would understand that what he is doing violates that right." *Id*. at 202. Therefore, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted." *Id.* To be clearly established, the law need not be a "precise formulation of the standard" where "various courts have agreed that certain conduct is a constitutional violation under facts not distinguishable in a fair way from the facts presented in the case at hand." *Id.*

Davis has failed to show Defendants subjected him to cruel and unusual punishment in violation of the Eighth Amendment. Consequently, the court need not consider whether Defendants are entitled to qualified immunity. However, assuming a constitutional violation occurred, the court finds the constitutional rights at issue were not clearly established at the time of the conduct and Defendants could not reasonably have known their conduct would result in constitutional violations. Accordingly, Defendants are, alternatively, entitled to qualified immunity.

*Conclusion*

Defendants' motion (ECF No. 47) for summary judgment is granted and Davis's complaint is dismissed with prejudice.

DATED this 3rd day of August, 2021.

JOHN V. ACOSTA
United States Magistrate Judge